㉑

FILED

APR 2 5 2016

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

1    **UNITED STATES BANKRUPTCY COURT**

2    **EASTERN DISTRICT OF CALIFORNIA**

3

4    In re:                          )    Case No. 14-21946-B-7
                                     )
5    DESIREE REBECCA LEWIS,          )    Adversary No. 14-2123̶6̶
                                     )
6                                    )
                Debtor(s).           )
7    _____)
                                     )
8    J. MICHAEL HOPPER, Chapter 7    )
     Trustee for the Bankruptcy      )
9    Estate of Jack Burns, and SALLY )
     WONG,                           )
10                                   )
                                     )
11              Plaintiff(s),        )
                                     )
12   v.                              )
                                     )
13   DESIREE REBECCA LEWIS,          )
                                     )
14              Defendant(s).        )
                                     )
15   _____)

16                    **DECISION AFTER TRIAL**

17

18   <u>**Introduction**</u>

19        This is an adversary proceeding (1) to have a debt excepted

20   from discharge under 11 U.S.C. § 523 and (2) objecting to

21   discharge under 11 U.S.C. § 727.  The plaintiffs are the chapter

22   7 trustee appointed in <u>In re Jack Burns</u>, Case No. 10-22742, and

23   Sally Wong.[1]  The defendant is Desiree Rebecca Lewis.  Lewis is a

24   debtor in the underlying chapter 7 case filed and pending in this

25   court as <u>In re Desiree Rebecca Lewis</u>, Case No. 14-21946.  The

26

27        [1]The original plaintiffs were John O. Brown and Sally Wong.
     Pursuant to an order filed in this adversary proceeding on
28   November 20, 2015, the chapter 7 trustee appointed in the <u>Burns</u>
     case referenced above was substituted as the plaintiff and real
     party in interest for John O. Brown.

1   Petition, Schedules, and Statement of Financial Affairs were

2   filed in Lewis' chapter 7 case on February 27, 2014.

3        The complaint in this adversary proceeding was filed on May

4   9, 2014.  It alleges five "Counts" as claims for relief:  a claim

5   under § 523(a)(2)(A) in Count I; a claim under § 523(a)(4) in

6   Count II; a claim under § 523(a)(6) in Count III; a claim under

7   § 727(a)(3) in Count IV; and a claim under § 727(a)(4)(A) in

8   Count V.  The summons was reissued on July 18, 2014, and,

9   together with a copy of the complaint, was served on July 23,

10  2014.  Lewis answered the complaint on August 15, 2014.

11       A trial in this matter was held on April 11, 2016.  Ronald

12  Roundy, Esq., appeared for the Burns trustee and Wong.  Brian

13  Turner, Esq., appeared for Lewis.  The court made several

14  pretrial rulings on the record in open court which are

15  incorporated herein by this reference.  The court also takes

16  judicial notice of the docket in this adversary proceeding and in

17  the underlying chapter 7 case.

18       The court has heard and considered the testimony of

19  witnesses and has also considered the documents admitted into

20  evidence.  The court now enters its findings of fact and

21  conclusions of law pursuant to Federal Rule of Civil Procedure

22  52(a) made applicable in this adversary proceeding by Federal

23  Rule of Bankruptcy Procedure 7052.

24

25  **Jurisdiction and Venue**

26       Federal subject-matter jurisdiction is founded on 28 U.S.C.

27  § 1334.  This matter is a core proceeding that a bankruptcy judge

28  may hear and determine.  See 28 U.S.C. §§ 157(b)(2)(A), (I), (J),

-2-

1  and (0).  To the extent it may ever be determined to be a matter

2  that a bankruptcy judge may not hear and determine without

3  consent, the parties nevertheless consent to such determination

4  by a bankruptcy judge.  See 28 U.S.C. § 157(c)(2).  Venue is

5  proper under 28 U.S.C. § 1409.

6

7  **Findings of Fact**

8       Lewis worked for Brown at the King of Curls in Sacramento,

9  California, in the months preceding and into March of 2006.

10 Lewis discussed her financial problems with other employees and

11 with Brown during that time.  Specifically, Lewis made it known

12 that the mortgage on her residence at 4822 Mission Beach Court,

13 Elk Grove, California, was in default and that the property was

14 in foreclosure.

15      Lewis asked Brown for a loan to avoid foreclosure on the

16 Mission Property.  Lewis told Brown that she could repay the loan

17 by refinancing another property she owned located at 3229 Babson

18 Drive, Elk Grove, California.  Lewis did not tell Brown that the

19 Babson Property was previously refinanced numerous times.  Lewis

20 and Brown also discussed other ways that Lewis could make money

21 to repay the loan such as by operating a daycare or laundry

22 business out of one of her properties, or by selling the Mission

23 Property.  In any event, Brown was fully aware of Lewis'

24 financial condition, he was aware that the Mission Property was

25 in foreclosure, and he endeavored to help Lewis nonetheless.

26      Brown discussed extending a loan to Lewis with his wife,

27 Wong, and they agreed to loan Lewis over $18,000 to help Lewis

28 avoid foreclosure on the Mission Property.  Lewis provided Brown

-3-

with her bank information and Brown gave that information to
Wong.  During her lunch break on March 30, 2006, and at Brown's
direction, Wong made a series of Western Union wire transfers to
Lewis' bank.  The funds for those transfers came from Wong's
separate property account.  Those funds were used to bring Lewis'
mortgage current which allowed Lewis to avoid foreclosure on the
Mission Property.

Wong had not met or talked with Lewis before she wired funds
to Lewis' bank.  Wong did not speak with Lewis until after the
wire transfers were made.  Wong spoke with Lewis afterwards
because of transposed numbers on the account to which the funds
were wired and to obtain the correct account information for
Lewis' account.

Before she transferred funds from her separate property
account to Lewis' bank, Wong did not inquire about Lewis'
financial condition.  Wong relied entirely on Brown's statements
that one of his newer employees needed a loan to save her house
from foreclosure.  Wong also testified that she knew that real
property values were depressed in 2006.

Five days after Wong transferred funds to Lewis' bank, on
April 4, 2006, Brown met with Lewis and asked her to prepare a
written agreement regarding the loan made on March 30, 2006, and
repayment of that loan.  Lewis provided Brown with a hand-written
document, which she refused to sign.  The document confirmed the
loan, included Lewis' statement that she had a purchase agreement
on the Mission Property, and also included Lewis' statement that
she would repay the loan with proceeds from the sale of the
Mission Property.

-4-

Several months later, on or about August 21, 2006, Brown and Wong sued Lewis in Sacramento County Superior Court.  The complaint filed in that state court action alleged breach of contract and fraud claims.  Three days later, on August 24, 2006, a deed of trust securing a $36,000 promissory note executed by Lewis was recorded against the Babson Property.  Those funds were not used to repay the loan.

The state court case was tried on April 20, 2007.  On April 24, 2007, Lewis recorded a homestead declaration on the Babson Property.  Fourteen days later, on May 8, 2007, the state court entered judgment in favor of Brown and Wong and against Lewis in the amount of $18,715.79.  The extent of the state court judgment is as follows:

> Evidence was presented by plaintiffs that funds in the amount of $18,715.79 were paid by them to defendant's lender to stop the foreclosure on her home.  Defendant contended that said funds were a gift.  After considering the evidence, the court finds that said funds were not a gift to defendant.

The state court judgment was recorded with the Sacramento County Recorder on May 21, 2007.  Shortly thereafter, Brown and Wong attempted to enforce the judgment by garnishing Lewis' wages.  They were unsuccessful because they did not have Lewis' social security number.

Brown and Wong made no other efforts to enforce or collect the state court judgment until seven years later when, on or about February 7, 2014, they initiated a debtor's examination in the state court.  That debtor's examination surprised Lewis because, as she told Wong at the time, she believed that the absence of any collection activity or enforcement of the judgment

-5-

1 | meant that the loan was forgiven.  Wong confirmed Lewis' belief
2 | during trial.

3 | During the debtor's examination, Lewis asked for a
4 | continuance.  That request was granted; however, the state court
5 | judge also ordered Lewis to provide documents to Brown and Wong
6 | by February 11, 2014, and to return for further examination on
7 | February 28, 2014.  Lewis did neither.  Instead, on February 27,
8 | 2014, Lewis filed a voluntary petition in the underlying chapter
9 | 7 case.

10 | Brown and Wong now seek to have their debt arising out of
11 | the state court judgment excepted from discharge under
12 | §§ 523(a)(2)(A), (a)(4), and (a)(6).  They also object to Lewis'
13 | discharge under §§ 727(a)(3) and (a)(4)(A).[2]

14 |

15 | **Conclusion of Law**
16 | **I.   The Nondischargeability Counts**
17 | A.   Count I - § 523(a)(2)(A)
18 | Count I of the complaint alleges a claim under
19 | § 523(a)(2)(A).  Section 523(a)(2)(A) states as follows:

20 | (a) A discharge under section 727 . . . of this title
21 | does not discharge an individual debtor from any debt -

22 | . . .

23 | (2) for money, property, services, or an extension,
renewal, or refinancing of credit, to the extent

24 |
25 | [2]The trial brief filed by the Burns trustee and Wong states
that relief is sought under §§ 727(c), (d), and (e).  Section
26 | 727(d) and (e) are inapplicable because they concern the
revocation of a discharge, which has not yet been entered in the
27 | underlying chapter 7 case.  Section 727(c) permits a creditor to
object to a debtor's discharge under § 727(a).  The only
28 | objections to Lewis' discharge under § 727(a) alleged in the
complaint are, as noted, §§ 727(a)(3) and 727(a)(4)(A).

-6-

obtained by - (A) false pretenses, a false
representation, or actual fraud, other than a statement
respecting the debtor's or an insider's financial
condition;

11 U.S.C. § 523(a)(2)(A).

A creditor seeking to except a debt from discharge under
§ 523(a)(2)(A) bears the burden of proving by a preponderance of
the evidence five elements:  (1) misrepresentation(s), fraudulent
omission(s), or deceptive conduct; (2) knowledge of the falsity
or deceptiveness of such representation(s), omission(s), or
conduct; (3) an intent to deceive; (4) justifiable reliance by
the creditor on the subject representation(s), omission(s), or
conduct; and (5) damage to the creditor proximately caused by its
reliance on such representation(s), omission(s), or conduct.
Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir.
2010) (citation omitted); Oney v. Weinberg (In re Weinberg), 410
B.R. 19, 35 (9th Cir. BAP 2009) (citations omitted).  The Burns
trustee and Wong have failed to meet their burden of proof on
several of the § 523(a)(2)(A) elements.

Among other things, § 523(a)(2)(A) renders nondischargeable
a debt for money "to the extent obtained by" misrepresentation,
fraudulent omission, or deceptive conduct.  The operative phrase
here is "to the extent obtained by."  To be actionable under
§ 523(a)(2)(A), the prescribed conduct must have occurred *before*
the debtor obtains the money.  In other words, the prescribed
conduct must induce the creditor to act.  See Shah v. Chowdaury
(In re Chowdaury), 2014 WL 2938274 at *3 (9th Cir. BAP 2014) ("a
creditor must establish that it was induced . . . to enter into"
the subject contract "by means of 'false pretenses, a false

-7-

representation, or actual fraud.'"). Prescribed conduct that occurs *after* the debtor obtains money does not count and will not support a nondischargeability claim under § 523(a)(2)(A). <u>Houng v. Tatung, Co., Ltd. (In re Houng)</u>, 499 B.R. 751, 766 at n.49 (C.D. Cal. 2013) ("Although the arbitrator found that Houng engaged in fraudulent transfers and diversions of funds from WDE, that conduct occurred after the parties had entered into the PSA. As a result, the arbitrator's findings of fraudulent transactions do not establish that Tatung relied on Houng's statements or conduct when it agreed to enter into the PSA."), <u>aff'd</u>, 2016 WL 145841 (9th Cir. 2016). Here, only two events fall within these parameters and neither support the § 523(a)(2)(A) claim.

The first is Lewis' representation that she could repay the loan by refinancing the Babson Property. Lewis made that representation to Brown, not Wong. However, Lewis did not obtain money from Brown. Inasmuch as the funds for the loan to Lewis came from Wong's separate property account, Lewis obtained money from Wong. Lewis and Wong did not speak before Wong loaned Lewis money from her separate property account. That means Lewis did not (and could not have) obtained money from Wong by a false statement or misrepresentation made to Wong.[3]

The second is the failure to disclose - or omission of information regarding - the Babson Property's refinance history.

---

[3]Even assuming Lewis' statement to Brown regarding the use of the Babson Property could be imputed to Wong, the statement was neither false, a misrepresentation, nor deceptive. Refinancing the Babson Property was only one potential source of repayment. Brown and Lewis discussed several other options. Thus, while refinancing the Babson Property was discussed as *a* means of repayment it was not discussed as *the only* means of repayment.

- 8 -

1  Under California law, an omission is fraudulent only if there is
2  a duty on the party making the omission to disclose.  SCC
3  Acquisitions Inc. v. Cent. Pac. Bank, 207 Cal. App. 4th 859, 864
4  (Cal. Ct. App. 2012) (quoting Blickman Turkus, LP v. MF Downtown
5  Sunnyvale, LLC, 162 Cal. App. 4th 858, 868 (Cal. Ct. App. 2008)).
6  Here, the Burns trustee and Wong produced no evidence that Lewis
7  was under any duty to disclose the refinance history of the
8  Babson property to Brown or Wong.

9       California law also recognizes that in transactions that do
10  not involve fiduciary or confidential relations, and thus a duty
11  to disclose, a cause of action for non-disclosure of material
12  facts may arise in at least three instances: (1) the defendant
13  makes representations but does not disclose facts which
14  materially qualify the facts disclosed, or which render the
15  disclosure likely to mislead; (2) the facts are known or
16  accessible only to defendant, and defendant knows they are not
17  known to or reasonably discoverable by the plaintiff; (3) the
18  defendant actively conceals discovery from the plaintiff.
19  Marketing West, Inc. v. Sanyo Fisher (USA) Corp., 6 Cal. App. 4th
20  603, 613 (1992) (citation omitted).

21       There was no need for Lewis to qualify for Wong any facts
22  regarding the Babson Property as a possible source of repayment
23  for the loan Lewis obtained from Wong because Lewis did not speak
24  with Wong before Wong made the loan to Lewis.  In other words,
25  before Lewis obtained money from Wong she made no statements to
26  Wong that required qualification in the first instance.

27       As to Brown, Lewis obtained no money from him which means
28  that any statement Lewis made to Brown about the use of the

-9-

1  Babson Property as a source of repayment was not material.
2  Lewis' statement to Brown about the potential use of the Babson
3  Property is also immaterial for two additional reasons.  First,
4  Brown testified that he is the type of person that likes to help
5  people.  Second, in her testimony, Lewis alluded to an "affair"
6  between her and Brown at the time the loan was made, and that
7  testimony was unchallenged.  Thus, the court is persuaded that
8  Brown would have facilitated Wong's loan to Lewis regardless of
9  any statement or omission about the Babson Property's refinance
10 history.

11      As to both Brown and Wong, neither the Burns trustee nor
12 Wong introduced any evidence that the Babson Property's refinance
13 history was actively concealed.  In fact, as the Burns trustee
14 and Wong readily established through the introduction of numerous
15 deeds of trust recorded against the Babson Property, the
16 property's refinance history was a matter of public record.  And
17 that means that information was not solely available to or
18 accessible by Lewis.

19      Finally, the court is not persuaded that reliance by Brown
20 or Wong on the representation that the Babson Property could be
21 used to repay the loan to Lewis, even in the absence of any
22 disclosure of the property's refinance history, was justifiable.
23 See Field v. Mans, 516 U.S. 59, 74-75 (1995).  Reliance falls
24 below the justifiable standard when "red flags" are ignored.
25 Anastas v. Am. Sav. Bank (In re Anastas), 94 F.3d 1280, 1286 (9th
26 Cir. 1996) (citation omitted); see also Giovanni v. Grayson,
27 Kubli & Hoffman (In re Giovanni), 324 B.R. 586, 594 (E.D. Va.
28 2005) (citation omitted); Copper v. Lemke (In re Lemke), 423 B.R.

- 10 -

917, 924-925 (10th Cir. BAP 2010) (holding that reliance was not justifiable because plaintiff continued to lend money "after various red flags arose"). And here, numerous "red flags" were ignored.

Brown only knew Lewis for several months. Brown knew that Lewis had financial problems. He also knew that Lewis owned two houses, that one of those houses was on the brink of foreclosure, and that Lewis could not afford to cure that default and prevent foreclosure. Under those circumstances, the court is not persuaded that facilitating a last minute loan made to a new and financially distressed employee based solely on the representation of repayment from a refinance on one property knowing that the borrower's other property is pending foreclosure is justifiable.

Wong's reliance falls even further below the justifiable threshold. Wong relied entirely on Brown's representation that one of his newer employees who she did not know needed a loan of over $18,000 to prevent a foreclosure on her home. Brown instructed Wong to wire funds to Lewis' bank. And without any question, Wong complied by leaving work on her lunch break to purchase and wire her own separate property funds to Lewis' bank through Western Union.

In sum, Count I of the complaint fails in at least three respects. First, the Burns trustee and Wong have failed to carry their burden of proving that the loan to Lewis was "obtained by" a false representation, false pretenses, or actual fraud. Second, they have failed to carry their burden of proving a fraudulent misrepresentation or omission. And third, they have

failed to prove their reliance on any omission, even if material, was justifiable.  Therefore, based on the foregoing, judgment on Count I of the complaint will be entered in favor of Lewis and against the Burns trustee and Wong.  The debt created by the state court judgment entered against Lewis will not be excepted from discharge under § 523(a)(2)(A).

B.    Count II - § 523(a)(4)

Count II of the complaint alleges a claim under § 523(a)(4). Section 523(a)(4) states as follows:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt -
>
> . . .
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]

11 U.S.C. § 523(a)(4).

There is no issue of a fiduciary relationship between Wong and/or Brown, on the one hand, and Lewis, on the other hand.  Nor is there any issue regarding embezzlement.[4]  Therefore, Count II of the complaint must stand on whether there was "larceny."

A debt can be nondischargeable for larceny under § 523(a)(4) without the existence of a fiduciary relationship.  Littleton, 942 F.2d at 555.  Bankruptcy courts look to the federal common law to define larceny for purposes of § 523(a)(4).  Ormsby v. First Am. Title Co. of Nev. (In re Ormsby), 591 F.3d 1199, 1205

---

[4]There is no evidence that Lewis used funds with which she was lawfully entrusted for an unauthorized purpose.  See Transam. Comm'l Fin. Corp. v. Littleton (In re Littleton), 942 F.2d 551, 555 (9th Cir. 1991).  In fact, Lewis used the loan proceeds she received from Wong for the very purpose for which they were intended to be used, i.e., to bring the mortgage on the Mission Property current.  Thus, Lewis used the loan proceeds for an authorized purpose.

1  (9th Cir. 2010).  Federal common law defines larceny as a

2  "felonious taking of another's personal property with intent to

3  convert it or deprive the owner of the same."  Id.  (Quotation

4  omitted).  "Larceny is distinguished from embezzlement in that

5  the original taking of the property was unlawful."  Lucero v.

6  Montes (In re Montes), 177 B.R. 325, 331 (Bankr. C.D. Cal. 1994).

7      The Burns trustee and Wong produced no evidence that Lewis

8  obtained the loan from Wong by unlawful means.  Brown knew that

9  Lewis' mortgage was in default, he decided to help bring the

10  mortgage current, he directed Wong to wire funds to Lewis' bank

11  account, and Wong complied.  Lewis used the funds for their

12  intended and authorized purpose, i.e., to bring her mortgage

13  current and avoid foreclosure of the Mission Property.  There is

14  nothing unlawful about that.

15      In sum, the Burns trustee and Wong have failed to carry

16  their burden of proving the debt created by the state court

17  judgment entered against Lewis is nondischargeable under

18  § 523(a)(4) based on larceny.  Therefore, judgment on Count II of

19  the complaint will be entered in favor of Lewis and against the

20  Burns trustee and Wong.  The debt created by the state court

21  judgment entered against Lewis will not be excepted from

22  discharge under § 523(a)(4).

23      C.   Count III - § 523(a)(6)

24      Count III of the complaint alleges a claim under

25  § 523(a)(6).  Section 523(a)(6) states as follows:

26         (a) A discharge under section 727 . . . of this title
           does not discharge an individual debtor from any debt -
27
           . . .
28

1

2

        (6) for willful and malicious injury by the debtor to
        another entity or to the property of another entity[.]

3

11 U.S.C. § 523(a)(6).

4

        Both willfulness and maliciousness must be proven to block

5

discharge under section § 523(a)(6).  Kawaauhau v. Geiger, 523

6

U.S. 57, 61-62 (1998).  Each element is analyzed separately.  See

7

Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th

8

Cir. 2008) (citation omitted).

9

        "A willful injury is a deliberate or intentional injury, not

10

merely a deliberate or intentional act that leads to injury."

11

Id.  (Quotation, internal emphasis, and quotations omitted).  In

12

other words, the "wilful injury requirement is met only when the

13

debtor has a subjective motive to inflict injury or when the

14

debtor believes that injury is substantially certain to result

15

from his own conduct."  Ormsby, 591 F.3d at 1206.  A malicious

16

injury is (1) a wrongful act, (2) done intentionally, (3) which

17

causes injury, and (4) is done without just cause or excuse.

18

Ormsby, 591 F.3d at 1207; Barboza, 545 F.3d at 706.  Malice may

19

be inferred from the wrongful act.  See Ormsby, 591 F.3d at 1207

20

(citation omitted).  However, to infer malice it must first be

21

established that the act was willful.  Thiara v. Spycher Bros.

22

(In re Thiara), 285 B.R. 420, 434 (9th Cir. BAP 2002).

23

        The Burns trustee and Wong have failed to carry their burden

24

of proving that Lewis obtained a loan - and then failed to repay

25

it - with the specific intent of causing financial injury or that

26

she believed that financial injury was substantially certain to

27

result from the loan or its non-repayment.  Brown, Wong, and

28

Lewis all testified that Lewis obtained the loan in order to

- 14 -

bring the mortgage on her home current and avoid foreclosure, and the loan proceeds were used for that purpose.  Lewis and Wong also testified that Lewis did not repay the loan because she believed that the absence of collection or enforcement activity for seven years meant the loan and debt created by the state court judgment was forgiven.  The court believes Lewis and finds her testimony credible.  Thus, inasmuch as the reason for the loan was to avoid foreclosure and the reason for its non-payment was a legitimate and corroborated belief that repayment was no longer necessary, the Burns trustee and Wong have failed to prove a willful injury by Lewis under § 523(a)(6).[5]

In sum, the Burns trustee and Wong have failed to carry their burden of proving the debt created by the state court judgment entered against Lewis is nondischargeable under § 523(a)(6).  Therefore, judgment on Count III of the complaint will be entered in favor of Lewis and against the Burns trustee and Wong.  The debt created by the state court judgment entered against Lewis will not be excepted from discharge under § 523(a)(6).

## II.  The Discharge Objection Counts

The party objecting to a debtor's discharge under § 727(a) bears the burden of proving by a preponderance of the evidence that the debtor's discharge should be denied.  Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir 2010).  Courts are to "construe § 727 liberally in favor of debtors and strictly against parties objecting to discharge."  Id. (Quotation and

---

[5]In the absence of a willful injury, the court need not reach the malice issue.

1  internal quotation marks omitted).

2      A.    Count IV - § 727(a)(3)

3      Count IV of the complaint is an objection to Lewis'

4  discharge under § 727(a)(3).  Section 727(a)(3) states as

5  follows:

6      (a) The court shall grant the debtor a discharge,
       unless—

7      . . .

8
       (3) the debtor has concealed, destroyed, mutilated,
9      falsified, or failed to keep or preserve any recorded
       information, including books, documents, records, and
10     papers, from which the debtor's financial condition or
       business transactions might be ascertained, unless such
11     act or failure to act was justified under all of the
       circumstances of the case[.]
12
13  11 U.S.C. § 727(a)(3).

14      In addressing the burdens of proof under § 727(a)(3), the

    Ninth Circuit has stated:
15
       [T]he purpose of [section 727] is to make the privilege
16     of discharge dependent on a true presentation of the
       debtor's financial affairs.  The initial burden of
17     proof under § 727(a)(3) is on the plaintiff.  In order
       to state a prima facie case under section 727(a)(3), a
18     creditor objecting to discharge must show (1) that the
       debtor failed to maintain and preserve adequate
19     records, and (2) that such failure makes it impossible
       to ascertain the debtor's financial condition and
20     material business transactions.  Once the objecting
       party shows that the debtor's records are absent or are
21     inadequate, the burden of proof then shifts to the
       debtor to justify the inadequacy or nonexistence of the
22     records.

23  Lansdowne v. Cox (In re Cox), 41 F.3d 1294, 1296 (9th Cir. 1994)

24  (citations, internal quotation marks, and quotations omitted).

25      Records that Lewis supposedly failed to maintain were not

26  identified.  They were not identified in the conclusory

27  allegations of the complaint, they were not identified in the

28  brief the Burns trustee and Wong filed shortly before trial, and

they were not established by evidence at trial.

Failure to identify the operative records means the Burns trustee and Wong cannot demonstrate difficulty in ascertaining Lewis' financial condition.[6]  That means the Burns trustee and Wong have not established a prima facie case under § 727(a)(3). That also means burden of proof never shifted to Lewis to explain or justify the inadequacy or non-existence of any of her records. Therefore, judgment on Count IV of the complaint will be entered in favor of Lewis and against the Burns trustee and Wong.  Lewis will not be denied a discharge under § 727(a)(3).

B.    Count V - § 727(a)(4)(A)

Count V of the complaint alleges a claim under § 727(a)(4)(A).  Section 727(a)(4)(A) states:

> (a) The court shall grant the debtor a discharge, unless—
>
> . . .
>
> (4)   the debtor knowingly and fraudulently, in or in connection with the case—
>
> (A) made a false oath or account;

11 U.S.C. § 727(a)(4)(A).

Under § 727(a)(4)(A), the objector must show:  "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently."  Retz, 606 F.3d at 1197 (citation omitted); In re Hoblitzell, 223 B.R. 211, 215 (Bankr. E.D. Cal. 1998).

---

[6]The court notes that, based on the entry made on the docket in the underlying chapter 7 case on April 8, 2014, the chapter 7 trustee had no difficulty determining Lewis' financial condition from the financial records she provided.

1    Schedules, Statements of Financial Affairs, and Petitions
2  are all executed under oath and penalty of perjury.  See Fed. R.
3  Bankr. Pro. 1008; Hamo v. Wilson (In re Hamo), 233 B.R. 718, 725
4  (6th Cir. BAP 1999).  Thus, "[a] false statement or an omission
5  in the debtor's bankruptcy schedules or statement of financial
6  affairs can constitute a false oath."  Khalil v. Developers Sur.
7  & Indem. Co. (In re Khalil), 379 B.R. 163, 172 (9th Cir. BAP
8  2007); Wills v. Wills (In re Wills), 243 B.R. 58, 62 (9th Cir.
9  BAP 1999).  However, even where a debtor concedes a petition
10  contains false statements, the court must still find the debtor
11  acted with the requisite knowledge and intent, and that the false
12  statements were material in order to deny a discharge.  Wills,
13  243 B.R. at 62.
14    The complaint identifies income from employment represented
15  on Lewis' Statement of Financial Affairs filed in the underlying
16  chapter 7 case as the false statement upon which the
17  § 727(a)(4)(A) claim in Count V is based.  In Question 1 of the
18  Statement of Financial Affairs, Lewis stated that she made
19  $1,642.30 year-to-date in 2014, $9,718.00 in 2013, and $90,253.00
20  in 2012.  Lewis was questioned about the $90,253.00 in the
21  Statement of Financial Affairs.  Lewis testified that she
22  received that income from her former airline employer as a
23  buy-out of her employment.  The court finds Lewis' testimony
24  credible, unchallenged, and consistent with what she stated in
25  Question 1 of the Statement of Financial Affairs.  In other
26  words, Lewis did not falsely state her income.
27    The Burns trustee and Wong also maintain in their trial
28  brief (but not in the complaint) that Lewis committed perjury

- 18 -

1  during the state court debtor's examination in January 2014.
2  Specifically, Lewis asked for a continuance to obtain counsel and
3  gather documents when, in fact, she did neither and, instead,
4  filed the petition in the underlying chapter 7 case.  The court
5  has doubts as to whether Lewis' statement in that context even
6  qualifies as a false oath under § 727(a)(4)(A).  That statement
7  was made before Lewis filed her chapter 7 petition and, thus,
8  before a chapter 7 case existed.  Put another way, Lewis'
9  statement in the state court proceeding was not made "in
10  connection" with her bankruptcy case because no bankruptcy case
11  existed when Lewis made the state court statement.

12      The Burns trustee and Wong further maintain in their trial
13  brief (and, again, not in the complaint) that Lewis committed
14  perjury during her deposition in July 2015 when she denied
15  knowing Wong.  This too will not support an actionable
16  § 727(a)(4)(A) claim for two reasons.  First, Lewis' deposition
17  testimony was not admitted into evidence.  Second, even if the
18  deposition testimony was admitted, the Burns trustee and Wong
19  failed to establish how this statement was material.  Only an
20  omission or misstatement that "detrimentally affects
21  administration of the estate" is material.  Wills, 243 B.R. at 63
22  (citation omitted).  There is no evidence how, if at all, this
23  statement had any impact on the administration of Lewis' chapter
24  7 case.

25      In sum, the Burns trustee and Wong have failed to carry
26  their burden of proving a claim under § 727(a)(4)(A).  Therefore,
27  judgment on Count V of the complaint will be entered in favor of
28  Lewis and against the Burns trustee and Wong.  Lewis will not be

1   denied a discharge under § 727(a)(4)(A).

2

3   **Conclusion**

4        For the reasons stated hereinabove, judgment on each and

5   every Count alleged in the complaint will be entered in favor of

6   Lewis and against the Burns trustee and Wong.  The debt created

7   by the judgment entered against Lewis by the Sacramento County

8   Superior Court on or about April 20, 2007, shall be discharged in

9   Lewis' chapter 7 case and Lewis will not be denied a discharge in

10  that chapter 7 case.

11       A separate judgment shall issue.

12       Dated:  April 25, 2016.

13

14                              UNITED STATES BANKRUPTCY JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

3

    The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

4

5
6

Ronald R. Roundy
8880 Cal Center Drive, Ste 400
Sacramento CA 95826

7
8

Brian H. Turner
1401 El Camino Ave #370
Sacramento CA 95815-2747

9
10
11

Sally Wong
4751 Freeport Blvd
Sacramento CA 95822

12
13

J. Michael Hopper
PO Box 73826
Davis CA 95617

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28